# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TRACEY GARLINGTON**<br>6636 Swope Parkway, Apt. 8<br>Kansas City, MO 64132<br>Plaintiff,<br><br>v.<br><br>**Anderson & Erickson Dairy**<br> Please serve at:<br> 5341 Speaker Rd<br> Kansas City, Kansas 66106<br>Defendant. | **Case No.** |

## COMPLAINT

**COMES NOW** Plaintiff, Tracey Garlington ("Ms. Garlington" or "Plaintiff"), by and through the undersigned counsel, and states and alleges as follows for his Complaint against Defendant Anderson & Erickson Dairy ("AE Dairy" or "Defendant").

## INTRODUCTION

1. In violation of Title VII of the Civil Rights Act, Americans with Disabilities Act (ADA) and Family and Medical Leave Act (FMLA), and Section 1981 Plaintiff was subjected to unlawful discrimination, retaliation, and wrongful termination while an employee of Anderson & Erickson Dairy, was subjected to unlawful disability discrimination.
2. Plaintiff was discriminated against because of her age, and race.
3. Plaintiff seeks compensatory and punitive damages against Defendant.

## PLAINTIFF

4. Plaintiff resides in Jackson County, Missouri.
5. Plaintiff was hired by Defendant on January 12, 2022.
6. At all times relevant, Plaintiff was employed as the Office Distribution Assistant at Defendant's location in Kansas City, Kansas.
7. Plaintiff worked full time for Defendant from January 2022 until his unlawful termination in June 2023.
8. Plaintiff is a minority (African American) male.
9. Plaintiff is disabled.
10. Plaintiff was subjected to unlawful discrimination, harassment and retaliation during his employment with Defendant.
11. Plaintiff complained to Defendant regarding discrimination, harassment and retaliation that he faced.

## DEFENDANT

12. The defendant is a well-known dairy company headquartered in Iowa with a location in Kansas City, Kansas.
13. Defendant always employed at least fifteen or more employees for at least twenty (20) weeks in the year preceding Plaintiff's termination and during Plaintiff's employment with Defendant.
14. Defendant is an employer within the meaning of 42 U.S.C.A. Section 1918 (Section 1981). Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.A Section 12101 (ADAAA) and 29 U.S.C.A Section 2615 (a) (2) ("FMLA Retaliation").
15. Defendant failed and refused to properly train its managers, supervisors, and employees regarding civil rights laws.
16. Defendant failed and refused to conduct any proper investigation into Plaintiff's complaints and failed and/or refused to stop illegal behavior.
17. Defendant is liable for the discriminatory, harassing, hostile actions and retaliatory actions by its employees against Plaintiff.

## JURISDICTION AND VENUE

18. This lawsuit is brought under Section 1981, Title VII, ADA, ADAAA, and FMLA for discriminatory, harassing, and retaliatory, and hostile behavior of Defendant and its employees.
19. Original jurisdiction lies herein pursuant to the statutes listed in paragraph 18 above. Further there is complete diversity in this case and the amount in controversy exceeds $75,000.
20. Venue is proper in this court pursuant to 28 U.S.C. section 1391 (b) and (c) as Defendant does business in this district and a substantial part of the unlawful conduct giving rise to the claims occurred in this district.

## CONDITIONS PRECEDENT

21. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 27, 2024.
22. Plaintiff received his Notice of Right to Sue from EEOC on October 8, 2024.
23. A true and accurate copy of the Notice of Right to Sue is attached hereto as Exhibit A and incorporated herein by reference.
24. This action has been timely filed with this Court and Plaintiff has met all conditions precedent to filing this action.

## FACTS COMMON TO ALL COUNTS

25. Ms. Garlington was hired as an Office Distribution Assistant, loading and unloading delivery trucks on January 12th, 2022.
26. On December 8th, 2022, Plaintiff fell ill with symptoms of irregular heart palpitation.
27. The plaintiff was placed on a pacemaker to restore a normal heartbeat and prevent cardiac arrest.
28. The plaintiff was instructed by his doctor to do light duty for six months.
29. The defendant was aware of the Plaintiff's condition.
30. The Plaintiff requested that Defendant accommodate him.

31. The defendant did not accommodate the Plaintiff.
32. Defendant placed Plaintiff on leave of absence for nearly a month.
33. On January 2nd, 2023, Plaintiff's job description was changed.
34. Plaintiff's duties consisted of ensuring that the driver received invoices, checking temperatures on trailers, training new drivers on held devices, and clocking in and riding with new drivers.
35. On May 28th a truck containing Defendant's wasn't working to maintain cool, and the temperature was 84°F.
36. Plaintiff refreshed some of the packaging and informed his supervisor that the product would be fine until another driver moved the product to another location.
37. Plaintiff's supervisor ordered the Plaintiff to unload the truck despite the temperature and his medical restrictions.
38. The Plaintiff reminded his supervisor that he was on light duty.
39. The supervisor, despite Plaintiff's reminders of this health condition, maintained his instructions.
40. The plaintiff did his best to unload the truck.
41. The Plaintiff on the next day informed his supervisor that he was not feeling well and asked for permission to seek medical attention.
42. The Plaintiff's doctor told him that his irregular heart rate was a result of unloading the truck on the heat.
43. Defendant upon learning about Plaintiff's health condition expressed concerns regarding his fitness for duty.
44. On June 2nd, 2023, Plaintiff received a fitness for duty letter stating that he needed to complete a medical fitness test with Defendant's doctors before he could return to work.
45. The Defendant's letter did not include a time frame or deadline to comply with the medical fitness exam.
46. Plaintiff complained that this test was unfair as some of his health concerns resulted from his supervisor requiring him to unload a truck in the heat.
47. On June 3rd, 2024, Plaintiff requested permission to use his vacation time to attend a family member's funeral in Louisiana.
48. The Plaintiff attended the family member's funeral from June 9th to June 13th, 2024.

49. On June 14th, Plaintiff retrieved the letter from the mail on June 14th, 2023, where he was instructed not to return to work until being released to do so by a doctor and passed a fitness test.
50. The plaintiff told Defendant that he wished to use his FMLA, asked if it would be paid or unpaid, attempted to confirm the process for applying for leave.
51. The Plaintiff was not provided with the information requested nor given any clarification regarding his fitness test.
52. The plaintiff did not attend work and waited for more instructions.
53. On June 19th, 2023, Plaintiff was terminated effective immediately by Gregg Gross, Defendant's Human Resources Manager.
54. Although, Plaintiff requested more information regarding his fitness for duty. Plaintiff's termination letter states that he was terminated because he did not complete his fitness test and because he was an at-will employee.
55. Defendant discriminated and harassed Plaintiff by refusing to accommodate him, forcing him to perform tasks that his doctor advised against, and refusing to provide information related to his use of FMLA leave.
56. Plaintiff's request to use FMLA leave motivated Defendant's decision to termination his employment.
57. Plaintiff complained about this unfair treatment before his termination.

## COUNT I
## SECTION 1981

58. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.
59. The Plaintiff was discriminated against in his employment because of a disability.
60. At all times relevant, Plaintiff suffered from heart conditions that substantially limits at least one major life activity this is rendering him disabled within the meaning of the ADA and ADAAA.
61. Plaintiff was a qualified individual within the ADA and ADAAA as he could successfully perform his job with or without a reasonable accommodation.
62. The Plaintiff received accommodation following his heart condition, however, the

Plaintiff's supervisor did not observe these accommodations.

63. As a result, the Plaintiff's heart rate became irregular, and he had to go to the doctor's office.
64. Defendant did not only not follow the accommodation put in place for Plaintiff but required a fitness test without providing a deadline or further instructions.
65. Plaintiff's disability was a motivating factor in Defendant's decision to terminate Plaintiff's employment.
66. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has sustained economic and non-economic damages.

**WHEREFORE**, Plaintiff prays for judgment in her favor and against Defendants on Count I of his complaint and requests an award of economic damages, non-economic damages, and reasonable attorney's fees together with her costs and any other relief the Court deems fair and equitable.

## COUNT II

## SECTION 1981

67. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.
68. Plaintiff is African American
69. Plaintiff was treated differently because of his race.
70. The conduct alleged adversely affected the terms and conditions of Plaintiff's employment.
71. As a direct and proximate cause of the actions and conduct herein, Plaintiff suffers and will continue to suffer damages, emotional distress and inconvenience.
72. The Conduct and actions of the Defendant constitute improper and discriminatory behavior.

**WHEREFORE**, Plaintiff prays for judgment in his favor on Count II of Complaint against Defendants and requests an award of economic damages, non-economic damages, and reasonable attorney's fees together with her costs and any other relief the Court deems fair and equitable.

## COUNT III

## RETALIATION IN VIOLATION OF FMLA

73. Plaintiff incorporates by reference every allegation made herein.

74. Prior to requesting FMLA leave, Plaintiff performed his duties to the reasonable expectations of Defendant.
75. Plaintiff engaged in protected activity by requesting FMLA.
76. Mr. Garlington's health suffered a brief setback due to Plaintiff's instructions to unload a truck despite his restrictions and weather conditions.
77. Mr. Garlington was placed on restriction due to his health conditions.
78. Mr. Garlington was placed on leave until provided proof of fitness for duty.
79. Defendant did not provide a deadline to present proof of fitness for duty, nor responded to Plaintiff's inquiries about the "leave".
80. Plaintiff was harassed and ridiculed for requesting leave.
81. Plaintiff's leave request was a motivating factor in Defendant's decision to terminate his employment.

**WHEREFORE**, Plaintiff prays for judgment in his favor on Count III of his complaint against Defendants and requests an award of economic damages, non-economic damages, and reasonable attorney's fees together with her costs and any other relief the Court deems fair and equitable.

**DEMAND FOR JURY TRIAL**

Demand is hereby made for trial by jury in this case.

Respectfully submitted,

By:    **LAW OFFICE OF STEPHEN R. WILLIAMS, LLC**

/s/ Stephen R. Williams
Stephen R. Williams KS #78956
4520 Main Street, Suite 700
Kansas City, MO 64111
Office: 816.286.6047
Fax: 816.756.1999
stephen@srwilliamslaw.com
**ATTORNEY FOR PLAINTIFF**

Case 2:25-cv-02008-JAR-TJJ   Document 1   Filed 01/06/25   Page 8 of 8